Appeal of **BRIGHTON MILLS.**          Docket No. 372.

> An alleged liability of the taxpayer in 1920 for a failure to fulfill a condition precedent to the other party's performance of a contract must be clearly established and must be then recognized by the parties in order to result in an accrued deductible loss in the year of such alleged breach. The bringing of suit in 1922 and payment in settlement in 1923 do not under the circumstances of the record entitle the taxpayer to deduction of loss in 1920.

Submitted December 27, 1924; decided January 27, 1925.

*Adrian C. Humphreys, Esq.,* for the taxpayer.

*Arthur H. Fast, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before JAMES, STERNHAGEN, and TRUSSELL.

The appeal involves a deduction claimed by the taxpayer for the calendar year 1920 representing an alleged loss. The taxpayer also asks that, in the event the Board determines that the alleged loss is not deductible in 1920, its profits tax be determined under sections 327 and 328 of the Revenue Act of 1918.

### FINDINGS OF FACT.

The taxpayer is a New Jersey corporation. On March 23, 1920, it made a contract with Harding, Tilton & Co., as selling agents of the Fairhaven Mills, and on May 4, 1920, it made two contracts with Harding, Tilton & Co., one as selling agents of the Nyanza Mills and the other as selling agents for Fairhaven Mills. Each of these three contracts provided that the taxpayer would purchase from Harding, Tilton & Co., as such selling agents, cotton tire yarns; the first, aggregating approximately 5,000,000 pounds; the second, about 2,500,000 pounds; and the third, about 2,500,000 pounds; deliveries to be made weekly, barring strikes, etc., at the rates of 50,000, 25,000, and 25,000 pounds, respectively. In all contracts deliveries were to begin January 3, 1921, and extend to December 31, 1922. Detailed specifications of yarn with notice to purchase cotton were to be furnished by the taxpayer to Harding, Tilton & Co. not less than three months nor more than seven months before the time specified for delivery. The prices to be paid by the taxpayer can best be set forth verbatim as they appear in the contracts. The Fairhaven contract of March 23, 1920, contains the following provisions:

3. The price to be charged by Harding, Tilton & Company for the 23/1 combed yarn, theoretical weight, delivered on beams, will be arrived at by first agreeing to the value of a particular quality of cotton, suitable for seller's standard (in case of being unable to agree on price, then Brighton Mills shall deliver and bill to Fairhaven Mills the cotton equal to Fairhaven Mills' types at Brighton Mills' valuation), and if said price for cotton is 35¢ per pound or less, add 33% of the cost of cotton for allowance of waste in manufacturing. If the price of cotton is higher than 35¢, then for each cent or fraction of a cent add ⅓ of 1% to 33%, which total percentage of the price of the cotton added to said price shall determine the valuation of cotton plus waste; the percentage shall not exceed 47%. To this valuation of the cotton in the yarn, add 24¢ per pound to cover the cost of manufacturing, depreciation, and the carrying of cotton; then add 24¢ per pound for profit, and to the sum total of the above add 6% to cover selling discount and commission.

4. The valuation of the cotton in 23/1 carded yarn will be determined in the same manner and the allowance added for waste on cotton of any price will be 19% added to the cost of the cotton, then add for manufacturing, etc., 23¢ and for profit 24¢, to which total add 6% for selling discount and commission.

5. On numbers finer than 23/1 the price will be three cents (3¢) per number additional, and on numbers coarser than 23/1 the price will be one cent per number less.

6. Any general advance or decline in the cost of supplies and of labor, either by reason of changing the number of hours or wages paid, will be compensated for by changing the amount which will be added to cover cost of manufacturing. The amount of such change to be determined by Harding, Tilton & Company after careful investigation. This change to take effect in both any uncompleted specifications and the contract at the time that the advance or decline becomes operative.

The price provisions of the Nyanza and the Fairhaven contracts of May 4, 1920, are identical (except the name of the Fairhaven Mills is substituted for the Nyanza Mills in the Fairhaven contract), as follows:

4. The price to be charged by Harding, Tilton & Company, theoretical weight, delivered on seller's beams for—

(a) The 23/1 combed yarn, twist not to exceed four and one-half times the square root of a number, will be arrived at by first agreeing to the value of a particular quality of cotton suitable for seller's standard. In case of being unable to agree on price, then Brighton Mills shall deliver to Nyanza Mills the cotton equal to Nyanza Mills' types at Brighton Mills' valuation, and bill same not more than ninety days prior to the date shipment of finished produce is due, and if said price for cotton is thirty-five cents (35¢) per pound or less, add 33% to the cost of cotton for allowance of waste in manufacturing. If the price of cotton is higher than thirty-five cents (35¢), then for each cent or fraction of a cent add one-third of one per cent to 33%, which total percentage of the price of the cotton added to said price shall determine the valuation of cotton plus waste; the percentage shall not exceed 47%. To this valuation of the cotton in the yarn add twenty-six cents (26¢) per pound to cover the cost of manufacturing and other expenses, depreciation, State and city taxes, but not Federal taxes; then add twenty-four cents (24¢) per pound of profit.

(b) 23/1 carded yarn prices will be determined in the same manner as combed and with same limitations, except that in figuring the value of the cotton in yarn add to the cotton price 19% of that figure with cotton of any value, then for manufacturing costs, etc., add twenty-five cents (25¢) and for profit twenty-three cents (23¢).

(c) To the value thus obtained in either A or B (i. e., cost of cotton in yarn plus manufacturing and profit) add 8% of that sum for selling commission, discount, and carrying costs of cotton, which gives the billing price.

5. If numbers other than 23s are specified, then for each number finer add to manufacturing cost of single yarn and also to profit of same one and one-half cents (1½¢) per number each, making a total additional charge of three cents (3¢) per number, before adding the 8% for selling commission, cotton carrying cost, and discount.

If coarser than 23s deduct for manufacturing cost one-half cent (½¢) per number and from profit one-half cent (½¢) per number, making a total deduction of one cent (1¢) per number, before adding the 8% for selling commission, cotton carrying cost, and discount.

6. Any general advance or decline in the cost of supplies affecting the mill producing the yarn, or in taxes other than Federal and of labor, either by reason of changing the number of hours or wages paid, will be compensated for by changing the amount which will be added to cover the cost of manufacturing. The amount of such change to be determined by Harding, Tilton & Company after careful investigation. This change to take effect in both any uncompleted specifications and the contract at the time the advance or decline becomes operative.

No specifications were furnished by the taxpayer to Harding, Tilton & Co. on or prior to October 1, 1920, although demand therefor was made. The taxpayer's only witness was unable to say whether

by reason of the failure to furnish specifications it admitted or denied liability for breach of contract at any time. Nothing appears to have been done by the parties in respect of the contracts or their failure until 1922, when suit was begun by Harding, Tilton & Co. The nature of the suit does not appear nor any other facts in respect thereof. In 1923 this suit was settled by the parties and the taxpayer paid the sum of $750,000 to Harding, Tilton & Co. No entry in respect of the transaction was placed upon the taxpayer's books of account until 1923 when payment was made.

### DECISION.

The determination of the Commissioner disallowing the deduction in question is approved. The appeal will be restored to the general calendar for further hearing upon the taxpayer's application for special assessment.

### OPINION.

STERNHAGEN: The sole question to be decided is whether the taxpayer may now have its 1920 income computed so as to reflect the deduction of the amount of $750,000 paid in 1923 to Harding, Tilton & Co. Counsel for the taxpayer urges that the failure before October 1, 1920, to furnish specifications of the yarn to be supplied under the contract constituted a breach of the contract; that by reason thereof the taxpayer was immediately liable for the damages sustained by Harding, Tilton & Co., and that the amount of such liability as finally determined by the parties and paid in 1923 may and should properly be deducted from gross income for the prior year 1920 in which such breach and resulting liability occurred. We are of opinion that upon the record before us the taxpayer has failed to sustain its position. It is by no means clear that the mere failure to furnish specifications by October 1, 1920, constituted a definite breach of the three contracts. The time for actual performance of the purchase began January 3, 1921. In some jurisdictions an anticipatory failure to perform the precedent condition constitutes an actionable breach and in others no cause of action arises until the failure of performance of the principal obligation to receive and pay for the goods. (6 Ruling Case Law, 1023, 1026.) But even if anticipatory breach be recognized in the jurisdiction where these contracts were enforceable, the law is equally clear that the other party has the alternative of treating the anticipatory failure as a breach or awaiting a failure of the performance of the contract. In the latter event, "he keeps the contract alive for the benefit of the other party as well as his own." *Id.* The liability is uncertain, for the promisee must take reasonable steps to mitigate the damage, and hence there is the possibility that fortunate extraneous circumstances will relieve the promisor from any actual pecuniary liability. If, as in *Roehm* v. *Horst*, 178 U. S. 1, cited by counsel, the promisee chooses immediately to treat the failure as a breach and so notifies the promisor, he may sue at once; and his damage will be the difference between the contract price and the cost of performance.

But in the instant case, assuming, as we have said, that the law of the forum recognizes anticipatory breach as a ground for immediate action, we have no facts upon which we could properly conclude

that there was actual liability in 1920. There is nothing to indicate how the parties themselves looked upon the situation. The witness, who was secretary and sales manager of the taxpayer, had no knowledge of whether the taxpayer acknowledged liability at any time or whether such liability was asserted by Harding, Tilton & Co. before the suit in 1922. All that appears is that there were three contracts; that the taxpayer was asked for specifications at the alleged appointed time, which it failed to give; and that in 1922 a lawsuit was begun which resulted in settlement in 1923 for $750,000. From this meager skeleton of fact it is manifestly impossible for us to conclude that there was such a definite legal liability in 1920 as it might accrue at that time. The taxpayer itself did not regard itself as having incurred a liability or suffered a loss, for it took no account of the matter on its books and, indeed, as we understand, did not make any deduction or any mention of the situation on its original income and profits tax return.

This is unlike the situation of the *Producers Fuel Co.*, 1 B. T. A. 202, which, when it refused to perform its contract, admitted its liability, made an offer in settlement, and before the close of the tax year entered the full amount of its ultimate liability upon its books and deducted it in its tax return. Both the fact of liability and a sufficient amount were actually accounted for and accrued in the year in question.

The taxpayer's amended petition filed at the time of hearing pleaded its alternative right to assessment under the provisions of sections 327 and 328 of the statute. Since we now decide that it is not entitled to the deduction of the alleged loss in 1920, consideration should be given by the Commissioner to the application for special assessment. The appeal will be restored to the general calendar for further hearing upon the taxpayer's right to special assessment or such aspects thereof as the parties are unable to agree upon.